## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA PANAMA CITY DIVISION

**JOHNNIE F. BEARDEN,**
    **Plaintiff,**

**v.**                                   **Case No. 5:10cv332/RS/CJK**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**
    **Defendant**.

_____

## REPORT AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b), and NORTHERN DISTRICT OF FLORIDA LOCAL RULES 72.1(A), 72.2(D), and 72.3, relating to review of administrative determinations under the Social Security Act ("Act") and related statutes, 42 U.S.C. §§ 401-1400v.  The case is now before the court pursuant to 42 U.S.C. § 405(g), for review of a final determination of the Commissioner of Social Security ("Commissioner") denying claimant's application for disability insurance benefits under Title II of the Act,  42 U.S.C. §§ 401-34.

Upon review of the record before this court, I conclude that the findings of fact and determinations of the Commissioner are supported by substantial evidence.  The decision of the Commissioner therefore should be affirmed.

## PROCEDURAL HISTORY

On August 11, 2007, Johnnie F. Bearden (who will be referred to by name, as plaintiff, or as claimant) protectively filed an application for disability insurance

benefits, alleging disability beginning May 21, 2007. T. 121-28. The application was denied initially on August 11, 2007, and upon reconsideration on June 6, 2008. T. 53-56, 66-67.[1] Claimant filed a written request for hearing, which was held before an administrative law judge ("ALJ") on May 10, 2010. T. 69-75. Plaintiff appeared and testified at the hearing; Robert M. Strader, an impartial vocational expert, also appeared at the hearing. T. 21-52. In a decision dated May 25, 2010, the ALJ denied claimant's application for disability insurance benefits, finding Mrs. Bearden had not been under a disability within the meaning of the Social Security Act from May 21, 2007, through the date of the decision. T. 10-16. The Appeals Council of the Social Security Administration denied plaintiff's request for review in a notice dated December 28, 2010. T. 1-3. The ALJ's decision thus stands as the final decision of the Commissioner and is now subject to review in this court pursuant to § 1383(c) of the Act.

## FINDINGS OF THE ALJ

In her written decision the ALJ made several findings relative to the issues raised in this appeal:

1. Claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

2. Claimant has not engaged in substantial gainful activity since May 21, 2007, the alleged onset date.

3. Claimant has the following severe impairments: lumbar and cervical spine disorders and carpal tunnel syndrome.

---

[1] The administrative record, as filed by the Commissioner, consists of eight volumes (doc. 11 through 11-7), and has 279 consecutively numbered pages. References to the record will be by "T." for transcript, followed by the page number.

4.  Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5.  Claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b), including the capability of lifting and carrying 20 pounds occasionally and ten pounds frequently, and sitting, standing, and walking up to six hours each in an eight-hour workday.  Claimant, however, is not capable of overhead reaching or lifting tasks, is not able to climb ladders, ropes, and scaffolds, and is not able to perform repetitive stooping.  Claimant has occasional postural motion limitations related to ramp/stair climbing, balancing, stooping, kneeling, crouching, and crawling, and must be afforded the opportunity to change positions as needed while remaining within the work station.  Lastly, claimant must avoid dangerous work hazards and exposure to extreme cold work environments.

6.  Claimant is unable to perform any past relevant work.  Claimant was born on June 2, 1966, and was 40 years old, which is defined as a younger individual age 18–49, on the alleged disability onset date.  Claimant has at least a high school education and is able to communicate in English.

7.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that claimant is "not disabled," whether or not claimant has transferable job skills.

8.  Considering claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that claimant can perform.

9.  Claimant has not been under a disability, as defined in the Social Security Act, from May 21, 2007, through the date of the administrative decision.

<u>STANDARD OF REVIEW</u>

"Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards." *Olds v. Astrue*, No. 5:09cv319/RS/EMT, 2011 WL 691595, at *1 (N.D. Fla. Jan. 19, 2011); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."). Substantial evidence is "'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Secretary[.]'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

The Social Security Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability, the physical or mental impairment must be so severe that the plaintiff is not only unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(g), the Commissioner analyzes a disability claim in five steps:

1.  If the claimant is performing substantial gainful activity, she is not disabled.

2.   If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3.   If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least 12 months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.   If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

5.   Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her residual functional capacity and vocational factors, she is not disabled.

Claimant bears the burden of establishing a severe impairment that keeps her from performing her past work.  *See* 20 C.F.R. § 404.1512.   "If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform."  *Olds*, 2011 WL 691595, at *2.  "If the Commissioner carries this burden, the claimant must then prove [she] cannot perform the work suggested by the Commissioner."  *Id.*

## FACT BACKGROUND AND MEDICAL HISTORY[2]

Plaintiff was born on June 2, 1966, making her 41 years of age on August 11, 2007, the date the application was filed.  T. 26.  Claimant reported a high school education and is able to communicate in English.  T. 26.  Alleging disability beginning May 21, 2007, plaintiff cites a history of lumbar and cervical spine injury, and dyslexia.  T. 121, 132.  Claimant reported past work experience as a retail store clerk, dairy manager at a grocery store, cashier, and meat wrapper.  T. 134, 149, 171-76, 197.

The medical evidence of record shows that claimant treated with Dr. Gerald Lachance, D.O., with PrimeCare Worker's Compensation, for injuries to her neck and shoulders following a work-related fall in May 2007.  T. 230-245.  On May 25, 2007, Dr. Lachance diagnosed cervical radiculitis, cervicalgia, and cervical spondylosis.  T. 236.  Dr. Lachance prescribed Flexeril and Mobic, as well as physical therapy, and advised plaintiff not to lift overhead or anything greater than 20 pounds.  T. 233-34.  With these restrictions, Mrs. Bearden was cleared to return to work.

On August 21, 2007, plaintiff presented to Bauman Chiropractic Clinic, where she was diagnosed with cervical acceleration/deceleration, headache, face/head pain, cervical/brachial radiculitis, thoracic plexus disorder, lumbar plexus disorder, sciatica/neuritis, and lumbar disc disorder.  T. 246.  Reporting low back pain since 2001 and neck pain since 2007, claimant underwent a consultative examination with Dr. Vincent Ivers, M.D., who specializes in internal medicine, on January 10, 2008.  T. 226-29.  Plaintiff complained that none of the treatments, including physical

---

[2] Although intended to be thorough, and to provide an overview of claimant's history of care and treatment, this synopsis of medical evidence will be supplemented as called for in the Analysis section.

therapy and chiropractic treatments, have shown to provide improvement.  T. 226.
Physical examination revealed some spinal tenderness, but normal range of motion
in the cervical spine and no muscle spasms; straight leg raises were at approximately
60 to 70 degrees. T. 227.  Dr. Ivers noted normal gait, reflexes, and strength.  T. 228.
Observing some reduced range of motion in claimant's lumbar spine, Dr. Ivers opined
that she would be limited in her ability to work in any type of environment requiring
repetitive lifting, straining, or stooping.  Dr. Ivers assessed a moderate degree of
lumbar disc disease (bulging disc at the lower lumbar spine) and mild cervical disc
disease.  T. 227, 229.

Plaintiff also submitted evidence of medication treatment and diagnostic
findings from 2001, when she injured her lower back in an automobile accident.  An
MRI of the lumbar spine, taken on March 28, 2001, showed (1) central to right
paracentral disc herniation at L5-S1, compromising the right lateral recess and
entrance to the lateral foramen; (2) right lateral to far lateral disc herniation at L3-4
contacting the right L3 nerve root after its exit from the foramen; and (3) broad
posterior disc bulge at L4-5 contacting the left L4 nerve root within the foramen.  T.
260.  A contemporaneous MRI of the cervical spine showed a small posterior disc
bulge to the left of the midline at C6-7 of uncertain significance.  The reviewing
physician identified no spinal or foraminal stenosis.  T. 261.

Other records from 2001 documenting nerve conduction studies and EMG
results revealed that Mrs. Bearden has bilateral carpal tunnel syndrome and
lumbosacral radiculopathy bilaterally.  T. 198-208.  Dr. E. Jacob, M.D., described the
symptomology as "severe" and correlated with the electrodiagnostic and MRI
findings.  T. 198.  Physicians contracted for by the State agency reviewed the

evidence and offered their expert opinion that claimant retained the physical ability to perform the exertional demands of at least light work as that term is defined in the regulations.  T. 249-56, 262-69.

<u>HEARING BEFORE THE ALJ</u>

The administrative hearing commenced on May 10, 2010, with the testimony of Mrs. Bearden, who stated that she lives with her husband and her 19-year-old daughter.  T. 25.  Claimant described her past employment as a dairy manager, vacuum assembler, cashier/clerk, and meat wrapper at a grocery store, where she lifted as much as 80 pounds on occasion.  T. 27-30.  Plaintiff complained of tension in her neck and chronic pain in the lower back that radiates down her leg.  T. 34-35.  Mrs. Bearden testified further that she experiences occasional weakness in her right leg and that the pain is aggravated by sitting and bending forward.  T. 35-36.  Claimant, however, asserted that she has "never had problems standing . . . ." T. 35.  Regarding her carpal tunnel syndrome, plaintiff stated that she experiences numbness and tingling in her fingers a couple times per day.  T. 37.  On occasion, Mrs. Bearden testified, her hands also swell.  T. 38.

Claimant stated that with the exception of some over-the-counter pain killers, she does not take any medications.  T. 38-39.  Plaintiff could not say with certainty whether the over-the-counter pain medications are of any help.  T. 39.  On a typical day, Mrs. Bearden explained, she does household chores like cooking and laundry.  Claimant testified that her husband does the yard work.  T. 40.  Plaintiff asserted that she is able to drive a car and goes grocery shopping approximately twice per month.  Driving does aggravate claimant's neck pain.  According to plaintiff, she is unable to afford medical care.  T. 41.  At the questioning of her attorney, plaintiff testified

that she cannot cook a full meal at one time; rather, Mrs. Bearden breaks to rest and cooks over the course of a full day.  T. 42.  When she sits down, claimant experiences "burning" and numbness in her legs.  T. 43.  In addition, plaintiff testified, her condition causes her to drop things at least once per week.  T. 43.

Upon the conclusion of Mrs. Bearden's testimony, the ALJ inquired of Robert M. Strader, an impartial vocational expert, as to claimant's work prospects:

> So assume an individual with the claimant's age, education and work background.  And assume for number one the individual is limited to light lifting and carrying tasks, so that's 20 pounds on an occasional basis, 10 pounds at a more frequent basis.  No overhead reaching with the upper extremities.  No ladder rope or scaffold climbing and only occasional postural motions, so it's occasional ramp and stair climbing, balancing, stooping, kneeling, crouching and crawling.  The individual needs to avoid exposure to extreme cold work environments, and also avoid exposure to dangerous work hazards such as unprotected heights and exposed machinery.  So for this first general hypothetical would this allow or preclude the claimant's past work?

T. 47.  Mr. Strader responded, "I think the bench assembler position that other people there would help her with the heavier lifting there and also the cashier, checker position would conform to that."  T. 47.  Mr. Strader testified further that the hypothetical individual could also perform work as a general clerk, ticket taker, and hand packer.  T. 47-48.

The ALJ then altered the hypothetical to "include the need for the individual to change positions during the work day . . . on an as needed basis but remain within the work station while doing so."  T. 48.  Mr. Strader replied that such an individual could not perform claimant's past work, but could still perform work as a general

clerk, ticket taker, and possibly parking lot cashier.  T. 48-49.  The ALJ posed a third
hypothetical, reducing the physical exertion requirements to sedentary:

> All right, and the last hypothetical for me is take number two and reduce
> it to sedentary, so that's 10 pounds occasionally, less than 10 pounds on
> a frequent basis for the lifting and carrying.  And it would include the
> change of position but also no more than two hours of standing and
> walking in an eight hour work day.  The remainder being sitting but with
> the opportunity to change positions.  So, jobs in the regional or national
> economy that you're aware of?

T. 49-50.  Identifying surveillance system monitor, hand packer, and order clerk, Mr.
Strader explained that there are jobs existing in significant numbers in the regional
and national economies that an individual with such a residual functional capacity
and vocational profile can perform.  T. 50.

## ANALYSIS

Plaintiff raises two issues in this appeal, arguing (1) that the ALJ failed to
properly evaluate her subjective complaints of pain and (2) that the ALJ posed an
incomplete hypothetical question to the vocational expert and improperly relied on
the corresponding response.  (Doc. 23, 5, 7-8)  Generally speaking, Mrs. Bearden
maintains that the ALJ's decision should be reversed because, she contends, it is not
supported by substantial evidence.  (Doc. 23, 11)

Claimant contends first that the ALJ did not evaluate her subjective complaints
of pain in accordance with the pain standard formulated by the appellate courts of this
Circuit.  Plaintiff maintains that the ALJ "failed to articulate explicit and adequate
reasons" for discrediting her testimony of disabling pain.  (Doc. 23, 7) In discounting
Mrs. Bearden's subjective complaints of pain, the ALJ found that "claimant's

statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."  T. 14.  The ALJ discounted plaintiff's pain testimony in part because plaintiff continued to work for several years after her 2001 injury:

> Though the claimant appeared to be somewhat sad at the hearing and complained of significant pain, her records do not demonstrate an inability to perform reduced light work tasks.  Her records document back and neck disorders and carpal tunnel syndrome (at least of 2001 which is prior to the alleged onset date of 2007), which appeared to be fairly significant disorders.  However, she engaged in substantial gainful activity for a few years after this time, proving that she was capable of working despite the 2001 findings.

T. 14.  Mrs. Bearden asserts that the ALJ relied on the foregoing evidence in error, because she alleged disability beginning May 21, 2007, after the date she injured her neck and shoulders in a work-related fall.  (Doc. 23, 7)

"The Secretary must consider a claimant's subjective testimony of pain if she finds evidence of an underlying medical condition, and either (1) objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain."  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).  "A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability."  *Id.* at 1561.  Failure to cite or refer to the language of the three-part pain test is not reversible error, however, where the ALJ cites to 20 C.F.R. § 404.1529, "which

contains the same language regarding the subjective pain testimony that [the Eleventh Circuit] interpreted when initially establishing its three-part pain standard." *See Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002). It is within the ALJ's discretion to determine that a plaintiff's claims of pain and other symptoms are not credible. *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). "But the ALJ's discretionary power to determine the credibility of testimony is limited by his obligation to place on the record explicit and adequate reasons for rejecting that testimony." *Id.*

Contrary to plaintiff's contentions, the ALJ did not rely merely on plaintiff's continued employment after 2001 in discounting her subjective complaints of pain. Rather, the ALJ cited a number of factors that undermine Mrs. Bearden's credibility as to the intensity, persistence, and limiting effects of her symptoms. First, the ALJ relied on the medical findings and opinions of Dr. Ivers, who saw claimant in January 2008 for a consultative examination. T. 226-29. As detailed above, Dr. Ivers observed some spinal tenderness, but normal range of motion in the cervical spine and no muscle spasms. Plaintiff was able to raise her legs 60 to 70 degrees during a straight leg raise test, although this movement did reproduce "some pain." T. 227. Significantly, Dr. Ivers noted normal gait, reflexes, and strength. T. 228. Observing some reduced range of motion in the lumbar spine, Dr. Ivers assessed a moderate degree of lumbar disc disease and mild cervical disc disease. T. 227, 229.

Consistent with the opinion of Dr. Lachance, however, Dr. Ivers ultimately opined that claimant would be limited in her ability to work in any type of environment requiring her to engage in repetitive straining, stooping, or heavy lifting.

T. 229.  In effect, then, Dr. Ivers did not restrict plaintiff from all substantial gainful activity, but merely limited her in a manner similar to Dr. Lachance, who cleared Mrs. Bearden to return to work subject to the restrictions that she not lift anything overhead or greater than 20 pounds.  T. 233-34.  As the ALJ recognized, the record evidence generated by the subject consultative examination with Dr. Ivers and claimant's treatment with Dr. Lachance does "not demonstrate an inability to perform reduced light work tasks."  T. 14.

Moreover, the ALJ properly assigned "significant weight" to the expert opinions of two physicians contracted for by the State agency, both of whom concluded that despite plaintiff's medically determined impairments, she retains the physical ability to perform the exertional demands of at least light work as that term is defined in the regulations.  Relying on the results of the 2001 lumbar and cervical spine MRIs and the consultative examination with Dr. Ivers, the reviewing physicians, Drs. Ann Rountry and Clarence Louis, independently concluded that Mrs. Bearden can occasionally lift and/or carry a maximum of 20 pounds and frequently lift and/or carry a maximum of ten pounds.  T. 250, 263.  The reviewing physicians also independently determined that claimant can stand and/or walk and sit for a total of about six hours each in an eight-hour workday, and that claimant is not limited in pushing and/or pulling.  T. 250, 263.  In consideration of plaintiff's lumbar spine disease and bulging disc, both Drs. Rountry and Louis identified postural limitations that would allow for no more than occasional stooping or crouching.  T. 251, 264.

Under the current regulations, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10

pounds."  20 C.F.R. § 404.1567(b).  "[A] job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  *Id.*  The court observes that no physician who has treated plaintiff, examined her, or reviewed the medical records precluded her from light work.  In essence, all four such practitioners arrived at the independent determination that claimant remains capable of satisfying the physical exertion requirements of jobs classified as "light."  The ALJ, in fact, offered the *most* restrictive assessment of Mrs. Bearden's residual functional capacity, determining that claimant "is limited to a reduced range of light work," considering such "additional limitations" as her inability to reach or lift overhead and the requirement that she be permitted to "change positions as needed while remaining within the work station."  T. 13, 15.  This last qualifier to residual functional capacity certainly takes pain and discomfort into acccount.

"State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act."  SSR 96-6P, 1996 WL 374180, at *2 (July 2, 1996).  "Findings of fact made by State agency medical . . . consultants and other program physicians . . . regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the administrative law judge and Appeals Council levels of administrative review."  *Id.* at *1.  Nonetheless, "the opinions of State agency medical . . . consultants and other program physicians . . . can be given weight only insofar as they are supported by evidence in the case record . . . ."  *Id.* at *2.

Here, the ALJ properly evaluated the opinions of the two State agency medical consultants, who "had the bulk of the evidence from the treating sources and consultative examiners that now comprise the official record in this case." T. 14. The ALJ also asserted, and the court agrees, that claimant's hearing testimony, "specifically as it relates to the claimant's activities of daily living, was consistent with the residual functional capacity opined by the reviewing doctors to a significant degree." T. 14. Regarding her activities of daily living, which an ALJ may consider in making a determination as to residual functional capacity, *see Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987), plaintiff testified that she regularly performs household chores like cooking and laundry, drives a car, and shops for groceries about twice per month. T. 40-41. According to Mrs. Bearden, she has "never had problems standing . . . ." T. 35. Such testimony indicates that claimant, though not without severe impairments, does not experience pain to a disabling degree.

The ALJ, as plaintiff now contends, did consider plaintiff's continued employment following the onset of back pain in 2001 in assessing her subjective complaints of pain. T. 14. In so doing, Mrs. Bearden asserts, the ALJ did not account for the limiting effects of claimant's subsequent neck and shoulder injury, sustained in 2007. (Doc. 23, 7) Though the court does not deny the possibility that impairments can become disabling in combination, the medical evidence of record does not support an inference of such a synergy in this instance. As discussed, the ALJ did not rely exclusively upon evidence of claimant's employment between 2001 and 2007 in analyzing her subjective complaints of pain. Rather, the ALJ cited this fact among a number of others, including the results of the consultative examination

with Dr. Ivers, the findings and opinions of the State agency physicians, and the hearing testimony of plaintiff herself.  The court can identify no legal deficiency in this analysis, and plaintiff points to no authority tending to preclude such a consideration.  *See* 20 C.F.R. § 416.929(c)(3) (directing the Commissioner to "consider all of the evidence presented, including information about [the claimant's] prior work record," in considering alleged symptom-related functional limitations and restrictions).  In sum, the court concludes that the ALJ fulfilled her "obligation to place on the record explicit and adequate reasons" for rejecting Mrs. Bearden's complaints of disabling pain.  *See Holt*, 921 F.2d at 1223.

For her second point, claimant argues the ALJ erred by posing an incomplete hypothetical question to the vocational expert.  Plaintiff submits that the second hypothetical presented did not address the relevant restrictions on "repetitive stooping" and "overhead lifting." (Doc. 23, 10)  In the original hypothetical, the ALJ precluded "overhead reaching" and stipulated to just "occasional" stooping:

> So assume an individual with the claimant's age, education and work background.  And assume for number one the individual is limited to light lifting and carrying tasks, so that's 20 pounds on an occasional basis, 10 pounds at a more frequent basis.  No overhead reaching with the upper extremities.  No ladder rope or scaffold climbing and only occasional postural motions, so it's occasional ramp and stair climbing, balancing, stooping, kneeling, crouching and crawling.  The individual needs to avoid exposure to extreme cold work environments, and also avoid exposure to dangerous work hazards such as unprotected heights and exposed machinery.

T. 47.  Building on these parameters, the ALJ altered the second hypothetical to "include the need for the individual to change positions during the work day . . . on

an as needed basis but remain within the work station while doing so." T. 48.  The vocational expert, Mr. Strader, asserted that such an individual could not perform claimant's past work, but could still perform work as a general clerk, ticket taker, and parking lot cashier.  T. 48-49.

After the ALJ finished her questioning of Mr. Strader, plaintiff's attorney sought clarification:

> ATTY:  For the responses to number two, the jobs either at the light or the sedentary level did either one -- did any of those jobs require repetitive stooping or overhead lifting or was that something that you had already eliminated?
>
> ALJ:  I reduced it to occasional for the ramp and stair climbing, balancing, stooping for the postural motions.  So my guess is that would not be repetitive, but I would defer to the VE [vocational expert] to make sure you're on the same page.
>
> VE:  That's correct, and there's no overhead work.
>
> EXAMINATION OF VOCATIONAL EXPERT BY ATTORNEY:
>
> Q[:]  Okay.  So in her restriction, if I precluded all overhead lifting or repetitive stooping, would that eliminate or change any of those jobs that were given in response to hypothetical two either at the light or sedentary level?
>
> A[:]  Yes, sir.
>
> Q[:]  Okay.
>
> ALJ:  Because I said overhead reaching, so overhead lifting that's okay.  I just wanted to make sure we were getting our terms right.

VE:  There was no overhead work.

T. 50-51.  In her written decision, the ALJ cited Mr. Strader's reply to the second hypothetical question, noting the vocational expert's belief that claimant is able to perform the requirements of representative occupations such as general clerk, ticket taker, and parking lot attendant.  T. 16.

The burden on the Commissioner is not disputed.  "If the claimant is unable to do past relevant work, the examiner proceeds to the fifth and final step of the evaluation process to determine whether in light of 'residual functional capacity,' age, education, and work experience the claimant can perform other work."  *Wilson*, 284 F.3d at 1227.  "The ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture."  *Id.*  "If nonexertional impairments exist, the ALJ may use Medical-Vocational Guidelines as a framework to evaluate vocational factors, but must also introduce independent evidence, preferably through a vocational expert's testimony, of existence of jobs in the national economy that the claimant can perform."  *Id.*  "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."  *Id.*

Having reviewed the hearing transcript and the medical records in their entirety, the court is not persuaded by plaintiff's interpretation of the relevant vocational expert testimony.  The ALJ clearly established in the first hypothetical, the parameters of which provided the foundation for the second such question, that Mrs. Bearden cannot stoop repetitively:  "No ladder rope or scaffold climbing and only

*occasional* postural motions, so it's *occasional* ramp and stair climbing, balancing, stooping, kneeling, crouching and crawling." T. 47 (emphasis added). Use of the word "occasional" to modify the individual's capacity for postural motions effectively excluded the possibility of "repetitive" stooping. Notably, the court cannot identify in the evidence of record any categorical restriction on stooping.

Claimant's argument regarding the restriction on overhead lifting is based similarly on semantics. The original hypothetical includes an absolute restriction on "overhead reaching with the upper extremities." T. 47. As the Commissioner points out, such a restriction subsumes and encompasses the additional restriction on overhead *lifting*, as an individual cannot lift overhead if she cannot use her arms to reach overhead. The court therefore finds that the hypothetical questions presented, in accordance with the prevailing legal standard, did in fact comprise all of plaintiff's impairments. *See Wilson*, 284 F.3d at 1227.

Mrs. Bearden, however, takes issue with the final exchange between her attorney and Mr. Strader, who acceded that a restriction "on all overhead lifting or repetitive stooping" would "eliminate or change . . . [the] jobs . . . given in response to hypothetical two . . . ." T. 50-51. In focusing on this exchange alone, claimant overlooks the significance of the subsequent discussion and conclusion of the dialog, when Mr. Strader clarified for the ALJ, "There was no overhead work." T. 51. Moreover, descriptions set forth in the Dictionary of Occupational Titles confirm that none of the representative occupations identified by the vocational expert in response to the second hypothetical are inconsistent with the lifting and postural limitations found in the ALJ's residual functional capacity assessment. The court thus concludes

that the ALJ articulated specific jobs claimant is able to perform and that this finding is supported by substantial evidence. *See Wilson*, 284 F.3d at 1227.

As analyzed above, the ALJ properly evaluated plaintiff's subjective complaints of pain. In finding those claims of pain not credible, the ALJ fulfilled her obligation, in accordance with this Circuit's pain standard, to place on the record explicit and adequate reasons for rejecting that testimony. *See Holt*, 921 F.2d at 1223. Likewise, the ALJ, having posed hypothetical questions comprising all of Mrs. Bearden's impairments, properly relied on the testimony of the vocational expert. *See Wilson*, 284 F.3d at 1227. Where, as here, the ALJ has conducted a thorough examination of the record and properly considered claimant's medical condition as a whole to reach a determination supported by substantial evidence, this court may not reverse the Commissioner's decision. *See Carnes*, 936 F.2d at 1218 ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied.").

Accordingly, it is respectfully RECOMMENDED:

The application for disability insurance benefits be DENIED.

At Pensacola, Florida, this 14th day of December, 2011.

*/s/ Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of any objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts,* 858 F.2d 698, 701 (11th Cir. 1988).